In addition to a full calendar, we have a motion argument today, so before I call the calendar, we'll hear on the motion, United States v. Daniel Carpenter. Thank you. Thank you, Your Honor. May it please the Court, my name is Michael Levy, I represent Daniel Carpenter. Daniel Carpenter is 65 years old, suffers from significant physical and mental health issues, including a bipolar disorder that was so severe that the District Court, on its own initiative, broke off sentencing on the first day and ordered a full psychiatric evaluation at Yale University. The results of which were confirming of the Court's suspicions and led, in the Court's opinion, to a very significant downward variance from an exceptionally high guidelines range of 292 months to a sentence of 30 months. Does this lead to other conclusions that the judge made, which were that even after Mr. Carpenter serves his sentence, he's not going to be convinced that he did anything wrong, and he might very well continue in the course of activity for which he's been found guilty both in Massachusetts and before the District Court judge, after a bench trial where the judge got to observe Mr. Carpenter. And so the judge just didn't think that you could make an affirmative statement based on clear and convincing evidence that he wouldn't repeat this course of conduct while he was out on bail. So a couple of responses to that, Your Honor. First of all, nothing had changed in the interim, as you say, the Court had had a lengthy opportunity to observe the defendant. Well, everything had changed. Before the trial, Mr. Carpenter was an unknown quantity. After the trial and after the psychiatric examination, he was a very well-known quantity. After the trial, I agree with Your Honor, and the standard at that point turned to exactly what it is today, Mr. Carpenter's obligation to show by clear and convincing evidence that he's not an economic danger, leaving aside the fact that it's not actually clear that economic danger is covered by the Bail Reform Act. But from that period of time upon the verdict, as Your Honor noted, Mr. Carpenter was well-known. His position on his being innocent was abundantly clear. And yet for two years, he was allowed out on bail with no objection from the government, no suggestion by the Court that he should be put in, and it's the exact same standard that we have here today. Could you speak to the likelihood of success on the merits of your claim? Certainly, Your Honor. I think the principal one is the issue that dealt with sentencing guidelines loss. The sentencing guidelines here were— What about the underlying crime of which he was convicted? The underlying crime of which he was convicted we are going to address in a couple of ways. In a bail motion, we're a little constrained on setting them all out. We are going to be challenging, based on Grimm, the idea that many of the wirings that were the basis of the individual accounts were not in furtherance of the fraud. They were after the policies had been procured and were just ordinary, regular, innocent payments of the premiums to the insurance companies and can't support wire fraud. On the money laundering—and this ties a little bit into our sentencing argument—on the money laundering, our position is that the death benefits from that specific policy that was paid off are not proceeds of this fraud. This was never a fraud about obtaining death benefits, and stoley fraud doesn't do anything to shift the risk of death benefits being paid. That's a risk that the insurance companies, as the Court found in Bazemore, that's a risk the insurance companies take on knowingly every day. They don't see that as a loss. On the sentencing issue, which I think is your main issue for bail, the district court did say in the end that it was going to ignore the sentencing guidelines. It started off by saying it's the framework, but then it said it's going to ignore it, and under the 3553A factors, this is what I think is an appropriate sentence. So how do you get around that? So a couple of responses to that, Your Honor. First of all, the Court said that it was going to ignore the guidelines, but it did say they have an anchoring effect, and they clearly do. You're obliged to start there, in any event. You're obliged to start there, and if we're correct that there was no loss and the guidelines range was 27 to 33 months, this is a different case. There is no way to say that that's harmless and that the fact that the guidelines were saying 30 years. Basically, I'm going to ignore it, and this is what I think is an appropriate sentence under the statute. I think even so, and I would point out in the next page of the transcript, he says even putting aside the guidelines, I think the things that inform the guidelines range in this case justify this sentence, including actual loss. So he's relying on the concept of actual loss one way or another, whether it informs the guidelines or not, and he's simply wrong. There was no actual loss, so if he is seeing this incorrectly as a $50 million loss case. I'm sorry. If we may, with Judge Pooler's permission, why isn't there actual loss? In other words, the argument is the insurance companies never would have issued these policies. Because they did issue the policies, they did suffer some losses. That is what they paid in commission. There were some death benefits paid. There were fees and less what they received in premiums. Why isn't that logical? So it is perfectly logical that there could be actual loss, and that's why we say we're not the Binday case. The Binday case, the defendants there said this can't be calculated. There's just no way to figure out actual loss, and as a result, this court said, okay, if that's your position, then we find that what the court did is not clearly erroneous. We agree there's a way to calculate actual loss, and we put forth a model below. It measures the difference between STOLI and non-STOLI. That has nothing to do with the death benefits. It has to do with how the policies are funded. STOLI policies, they expect a little bit less in premium payments every month, and it affects the lapse rates. STOLI policies you would expect never to lapse, whereas the insurance companies accept some number of non-STOLI policies. That ignores the argument that they wouldn't have issued the policies at all. And on that, the Supreme Court and this court have been very clear that but for causation, that the idea that just because a transaction occurred, everything that follows from it is a harm that results from that, is not the standard for criminal law. It is the standard, frankly, in that very narrow category of loan fraud cases that the government relies on, that trio of cases in loan fraud. Everywhere else in criminal law and sentencing, the idea is that you separate out the harm from the fraud and harms that just happened as a result of the overall transaction. Death benefits are just a harm that, it's not a harm, are just a fact of life for insurance companies, and nobody misled the insurance companies in this case about the health, about that risk that they were taking on. And that's what the Eighth Circuit recognized in Bazemore, is if, but for the STOLI part of this being hidden, the insurance companies got exactly what they thought they were getting in terms of the risk of a death benefit, and that's why the death benefits can't be included. And yet, they were overwhelmingly the basis of the actual loss here. I mean, it was essentially all death benefits. We'll hear from the government now. Thank you. Thank you, Your Honor. May it please the Court. My name is David Novick, and I represent the government in this matter. Your Honors, the defendant cannot meet his burden for release pending appeal here for two key reasons. First, as to his argument on loss, the method approved by the district court here was virtually identical to the one used in Binday, and this court rejected the same challenge that Mr. Carpenter makes today to that loss model. Second, as to his evidentiary arguments, he fails principally because he does not challenge all of the counts of conviction, and therefore, which is, A, a requirement under this court's law that has to lead to reversal, and, B, even if the challenge counts were excised from the case, the guidelines would end up exactly the same. Let me address briefly the calculation of loss. First, the calculation of loss that was used here was virtually identical, as I said, to the one used in Binday, and it's a straightforward analysis. The evidence in this case was that absent the defendant's misrepresentations, absent the fraud, these policies would never have been written. And all of the loss in this case would be the loss, the profit loss on each policy as a result of the defendant's lies. This is consistent with how this Court has assessed loss in fraud cases, including in Binday, on which this indictment was modeled. The alternative that the defendant proposes here is the same one that was proposed by Mr. Binday in that case, and that is to somehow link the economic rationale of the insurance company to loss. And this Court rejected it. Not only did it reject that argument, it said that there was no alternative readily apparent, notwithstanding the fact that that alternative had been referenced in the defendant's brief in that case. And it's for good reason, because the alternatives that were proposed, the issue that this Court identified in Binday, had nothing to do with linking the economic decision-making issues to loss. It had to do with whether you could assess loss at the time of the sentencing when not all the policies had been concluded, had been terminated. And even putting aside this Court's rejection of that argument, there are still several fatal flaws of the defendant's argument. It assumes that even if the insurance companies knew about the loss, that they could actually accurately price the stoley policy. The testimony from the insurance companies here wasn't that they would have been able to alter lapse rates, alter funding patterns, and then come up with an accurate gauge of what the pricing would have been. The testimony was, we price based on 30 years of experience or more of experience, and in this case, we simply don't know how stoley policies perform over time. Here's a couple reasons why we think that it would vary, but we don't know the answer, and so we're going to reject outright. We don't want to take these risks. That was the testimony of the insurance companies in this case. It also conflates the guilt phase of the case with sentencing. The guilt phase of the case, the issue is why the insurance companies would have rejected the policies, or did reject these policies. At the sentencing phase, Your Honors, the issue is much more what was the loss. They made the decision not to accept the policies, and what was the loss as a result. And finally, as Your Honors mentioned, the judge here specifically said he was ignoring the guidelines, that he, as Your Honors mentioned, he sat through a six-week bench trial with this defendant. He ordered a psychiatric evaluation of the defendant, and still came up with a sentence based on his experience with this defendant in this case, much more than any guideline. The second reason why the defendant cannot meet his burden, Your Honors, it doesn't challenge, first of all, all the counts. In other words, even a successful appeal here would not result in reversal. It leaves in place the conspiracy and the counts involving the wires and mailings involving applications. And not only that. There's no chance of those being reversed. Correct, Your Honor. Not based on the challenges the defendants advanced today. That's right. That could impact sentencing. Your Honor, respectfully, I don't believe it would, because the guidelines would come out the same. On the wire and mail fraud, it's the same scheme. So even if there are- I understand that, but there's a quarrel over whether the guideline is correctly calculated. So, I mean, it could possibly have an impact if there are fewer counts of conviction. I'm just isolating out here, Your Honor, this sole issue as to- because even if the- the only thing challenged here is whether wires and mailings were in furtherance of. And for sentencing purposes, it would still be considered as part of relevant conduct, even if- because it's one scheme, even if it's out of statute. And you haven't- the appeal hasn't been set yet? A date hasn't been set for it? The brief by appellant is due at the end of next month, Your Honor. So they could indeed, by that time, seek to overturn every one of the counts of conviction. Could they not? They could, Your Honor. They haven't advanced the rationale for that before this court today. I see I'm out of time. Thank you all very much. Thank you. Well, the report date is when? It is Friday. I will reserve decision, but try and get a decision out this afternoon. Very good. Thank you, Your Honor. Thank you.